JOHN E. KELLY, ESQ. (CA Bar 40,217)
MICHAEL A. DiNARDO, ESQ. (CA Bar 216,991)
SCOTT M. LOWRY, ESQ. (CA Bar 244,504)
KELLY LOWRY & KELLEY, LLP
6320 Canoga Avenue, Suite 1650
Woodland Hills, California 91367
Tel: (818) 347-7900
Fax: (818) 340-2859
E-Mail: mike@klkpatentlaw.com
Attorneys for Counterdefendant CB Worldwide, Inc.
d/b/a Mammoth Pet Products

NOTE: CHANGES MADE BY THE COURT

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CB WORLDWIDE, INC. d/b/a MAMMOTH PET PRODUCTS, a California corporation<br><br>            Plaintiff,<br><br>      v.<br><br>XENA EXPRESS, INC., an Alabama Corporation, and DOES 1 to 10<br><br>            Defendants.<br><br>AND RELATED ACTIONS | ) Case No. 09CV02189 JFW (AJWx)<br>)<br>)<br>) **FINDINGS OF FACT, CONCLUSIONS**<br>) **OF LAW AND ORDER ON MOTION FOR**<br>) **DEFAULT JUDGMENT AND PERMANENT**<br>) **INJUNCTION**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Whereas,** Plaintiff CB Worldwide, Inc. d/b/a Mammoth Pet Products ("Mammoth") filed its Complaint against Defendant Xena Express, Inc., formerly Pet Friendly, Inc., formerly Essential Pet Products, Inc. ("Defendant") for:

(1) Declaratory Judgment that Defendant's U.S. Design Patent No. D497,225 is invalid;

(2) Declaratory Judgment that Mammoth has not infringed Defendant's U.S. Design Patent Nos. D497,225, D456,958, D465,885, and D382,678;

(3) Declaratory Judgment that Defendant does not own any proprietary rights in any alleged trademarks, trade dresses and/or product configuration marks in "variegated rope toys of any configuration";

(4) Declaratory Judgment that Defendant's alleged trademarks, trade dresses and/or product configuration marks in "variegated rope toys of any configuration" are invalid;

(5) Declaratory Judgment that Mammoth does not and has not infringed Defendant's alleged trademarks, trade dresses and/or product configuration marks in "variegated rope toys of any configuration";

(6) Judgment that Defendant has unfairly competed with Mammoth, inter alia, by unlawfuly accusing Mammoth and its customers of infringing non-existent, invalid and/or unenforceable patents, trademarks, trade dresses, and/or product configuration marks, because of which Mammoth has suffered substantial injury, loss and damage; and

(7) Judgment that Defendant has intentionally

interfered with Mammoth's economic advantage, to wit, Mammoth's existing contractual relationships with its customers by unlawfully accusing Mammoth's customers of infringing non-existent, invalid and/or unenforceable patents, trademarks, trade dresses, and/or product configuration marks, because of which Mammoth has suffered substantial injury, loss and damage;

**Whereas,** Defendant has failed to file an Answer or otherwise respond to Mammoth's Complaint, and the Clerk's Entry of Defendant's Default was entered on August 7, 2009;

**Whereas,** Mammoth has filed its Motion For Entry of Default Judgment and Permanent Injunction against Defendant, and there appears to be no reason for the delay of the entry of default judgment and permanent injunction by the Court against Defendant;

**Whereas,** Mammoth's Motion For Entry of Default Judgment and Permanent Injunction was considered and ruled upon on October 6, 2009 by the Honorable John F. Walter; and

**Whereas,** having considered the evidence and papers presented by Mammoth and noting the lack of appearance and opposition by Defendant despite numerous instances of notice and service, and good cause appearing therefore, the Court makes the following findings of fact and conclusions of law:

1.   Mammoth is in the business of manufacturing, distributing and selling numerous dog chew toys including lengths of rope tied in loop rings and/or figure-eight loop rings including a tennis ball thereupon (the "Accused Products") (Byrne Decl. ¶4:

Exhibit A);

2.   In numerous letters and e-mails, Defendant has accused Mammoth and several of its customers of infringing various forms of intellectual property, including design patents and trademarks, trade dresses, and/or product configuration marks, allegedly owned by Defendant by virtue of the sale of the Accused Products. (Byrne Decl. ¶¶ 9, 17-18, 20-21, 23 and 27; Exhibits D, I, J, L, M, O and S);

3.   Both Mammoth and Defendant transact business within this judicial district;

4.   The Court has jurisdiction over the Parties and subject matter of this action;

5.   In or about 1985, a company called "GR8K9" started marketing multicolor, i.e., variegated, cotton rope dog bones in Southern California (Byrne Decl, ¶5);

6.   In the later part of the 1980's, several other companies began manufacturing, importing, selling, marketing, advertising, promoting and distributing multicolored cotton rope dog chew toys (Byrne Decl. ¶5);

7.   In the early 1990's, a company called Booda Products produced, marketed and sold multicolored cotton rope dog chew toys (Byrne Decl. ¶6);

8.  At least as early as 1994/1995, Booda Products sold its multicolored cotton rope dog chew toys to a Japanese customer called Tokyo Pet Corporation (Byrne Decl. ¶7);

9. Tokyo Pet Corporation displayed such multicolored cotton rope dog chew toys, such as, cotton-based chew toy rings having a piece of non-cotton chewable material affixed thereon, and pet/dog chew toys having variegated (i.e. multicolored) intertwined rope, in its product catalog dated 1994/1995 (Byrne Decl. ¶7; Exhibit B);

10. In or about 1994, Mammoth started producing and selling similar multicolor cotton rope dog chew toys under a private label to numerous customers, including Penn-Plax Pet Products (Byrne Decl. ¶8);

11. Penn-Plax Pet Products displayed several cotton rope dog chew toys including the variegated rope structure, i.e. multi-colored intertwined rope, and/or non-cotton chew add-ons in its 1994/1995 product catalog (Byrne Decl. ¶8; Exhibit C);

12. The 1994/1995 Penn-Plax Pet Products catalog specifically describes some of its dog chew toys as including "[u]nique Ring-O's™ . . . chains of brightly colored cotton blend rope rings in 3 sizes", and that many of its products are "striped" (Byrne Decl. ¶8; Exhibit C);

13. As early as August 26, 1999, Mammoth was selling dog chew toys comprising lengths of rope tied in loop rings and/or figure-eight loop rings including a tennis ball thereupon (Byrne Decl. ¶14; Exhibit G);

14. As early as September 1, 2000, Mammoth was advertising and offering for sale in Pet Business

magazine dog chew toy products comprising lengths of variegated rope tied in loop rings and/or figure-eight loop rings, some including a tennis ball or other chew toys thereupon (Byrne Decl. ¶¶15-16; Exhibit H);

15. On or about October 7, 1998, Defendant Xena Express, Inc., formerly Pet Friendly, Inc., formerly Essential Pet Products, Inc. ("Defendant") had its lawyers send Mammoth a letter asserting claims of trademark infringement and unfair competition in relation to a pending trademark application for multi-colored stranded rope and the "sale of pet products incorporating multi-colored rope" (Byrne Decl. ¶9; Exhibit D);

16. Mammoth responded to the October 7, 1998 letter from Defendant's lawyers by requesting a copy of a referenced trademark application, as well as, products characterized by the multi-colored stranded rope, to which Mammoth never received a response (Byrne Decl. ¶¶10-11 and 13; Exhibits E and F);

17. On or about February 18, 2005, Defendant accused one of Mammoth's customers, That Fish Place-That Pet Place, of infringing "rope toys that are patented by Pet Friendly, Inc." and of making its trademarked rope design  (Byrne Decl. ¶17; Exhibit I);

18. Defendant, on or about February 24, 2005, threatened That Fish Place-That Pet Place and Mammoth "for the $170,000,000 of lost sales for Pet Friendly last year by infringers"; and on or about March 2,

2005 threatened the Vice President of That Fish Place-That Pet Place, Rick Amour, in that the Defendant was "issuing a warrant for [Mr. Amour's] arrest for theft of property" (Byrne Decl. ¶ 18; Exhibit J);

19. On or about March 3, 2005, Mammoth's counsel responded to Defendant's threats against That Fish Place-That Pet Place and Mammoth (Byrne Decl. ¶19; Exhibit K);

20. On or about March 4, 2005, Defendant again claimed that the "rope Mammoth is importing is infringing on our TRADEMARKED variegated design rope" and that he would instigate a "federal investigation" (Byrne Decl. ¶20; Exhibit L);

21. After the correspondence in 2005, Mammoth did not hear from Defendant regarding any alleged infringement for more than one and one-half years (Byrne Decl. ¶¶20-21);

22. On or about October 19, 2006 another lawyer for Defendant sent a letter to the lawyers for Mammoth accusing Mammoth of infringing the D497,225 patent by distributing two products to PetCo (Byrne Decl. ¶21; Exhibit M);

23. On or about October 30, 2006, attorneys for Mammoth responded to Defendant's lawyers including information about Mammoth's sales of the Accused Products more than one year before the effective filing date of the D497,225 patent and requesting the abandonment of such patent (Byrne Decl. ¶22; Exhibit

N);

24. After the correspondence in 2006, Mammoth did not hear from Defendant regarding any alleged infringement for two years (Byrne Decl. ¶23);

25. On or about October 23, 2008, Defendant threatened PetSmart, another of Mammoth's customers, of infringing Defendant's design patents by selling the Accused Products (Byrne Decl. ¶23; Exhibit O);

26. Mammoth's customer, PetSmart, was concerned about the threat of patent infringement and requested assurances from Mammoth (Byrne Decl. ¶¶24-25 and 28-29; Exhibits P, Q and T);

27. On or about December 1, 2008, Mammoth responded to Defendant's threats of infringement against PetSmart again providing information about its prior sales and the invalidity of the D497,225 patent. (Byrne Decl. ¶26; Exhibit R);

28. On or about February 26, 2009, Defendant again communicated with PetSmart this time including an invoice payable to Pet Friendly, Inc. for "$50,000.00 for copy right infringement" and requested that PetSmart's rope buyer contact Defendant (Byrne Decl. ¶27; Exhibit S);

29. In July 2009, PetSmart stopped ordering the Accused Products from Mammoth that it had been purchasing since at least as early as April 2008. The buyer from PetSmart, Jim Smith, informed Mammoth in a telephone conversation that PetSmart would no longer

be ordering the Accused Products, in part because of the threats from the Defendant and the desire to avoid becoming involved in a legal dispute (Byrne Decl. ¶29);

30. Over the past twelve months, the sales of the Accused Products to PetSmart totaled $31,581 with gross profits of about $9,474 and net profits of about $3,158. Mammoth has lost those sales since July 1, 2009 (Byrne Decl. ¶29);

31. Defendant's U.S. Design Patent No. D497,225 is invalid under 35 U.S.C. §102(a) and (b) in light of Mammoth's sale of its similarly configured products at least as early as August 26, 1999, more than two and one-half years before the effective filing date of the application resulting in the D497,225 patent;

32. Mammoth's Accused Products have not and do not infringe U.S. Design Patent No. D497,225 by virtue of being on sale since at least as early as August 26, 1999, more than two and one-half years before the effective filing date of the application resulting in the D497,225 patent;

33. Mammoth's Accused Products have not and do not infringe U.S. Design Patent Nos. D497,225, D456,958, D465,885, and D382,678 because the Accused Products do not "embody the patented design or any colorable imitation thereof" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008)(en banc);

34. Defendant does not own any proprietary rights in

any alleged trademarks, trade dresses and/or product configuration marks in "variegated rope toys of any configuration";

35. Defendant's alleged trademarks, trade dresses and/or product configuration marks in "variegated rope toys of any configuration" are invalid because such alleged trademarks, trade dresses and/or product configuration marks are functional and/or lacking in secondary meaning sufficient to create an association in the minds of the consumers;

36. Mammoth's Accused Products have not and do not infringe Defendant's alleged trademarks, trade dresses and/or product configuration marks in "variegated rope toys of any configuration" because a likelihood of confusion does not exist between the Accused Products and Defendant's alleged trademarks, trade dresses and/or product configuration marks in "variegated rope toys of any configuration";

37. Defendant has unfairly competed with Mammoth, inter alia, by accusing Mammoth and its customers of infringement of invalid and/or unenforceable patents, trademarks, trade dresses and/or product configuration marks because of which Mammoth has suffered substantial injury, loss and damage;

38. Defendant has intentionally interfered with Mammoth's economic advantage, to wit, Mammoth's existing contractual relationships with its customers; and

39.   Defendant's   unlawful   activities   result   in
irreparable   injury,   and   damage   to   Mammoth   and   will
continue   to   cause   Mammoth   irreparable   injury   absent
the   issuance   of   an   injunction,   because   Mammoth   does
not   have   an   adequate   remedy   at   law.

Accordingly, it is hereby **ORDERED** that:

1.   Plaintiff   CB   Worldwide,   Inc.   d/b/a   Mammoth   Pet
Products' Motion For Default Judgment and Permanent Injunction
is **GRANTED**;

2.   Default   Judgment   shall   be   entered   against   Defendant
Xena Express, Inc, said Default Judgment submitted herewith in
separate form;

3.   A   Permanent   Injunction   shall   be   entered   against
Defendant   Xena   Express,   Inc.,   said   Permanent   Injunction
submitted herewith in separate form;

4.   Plaintiff   CB   Worldwide,   Inc.   d/b/a   Mammoth   Pet
Products shall recover its damages in the form of lost profits
for   the   intentional   interference   with   economic   advantage   by
Defendant   Xena   Express,   Inc.,   to   wit,   accusations   that   the
Accused   Products   infringed   the   alleged   patents,   trademarks,
trade   dresses   and/or   product   configuration   marks   of   Defendant
Xena   Express,   Inc.   made   against   certain   customers   of   Plaintiff
CB Worldwide, Inc. d/b/a Mammoth Pet Products which caused such
customers   to   cease   doing   business   in   the   Accused   Products,   such
damages   to   be   determined   in   a   separate   prove   up   on   noticed
motion.

5.   Plaintiff   CB   Worldwide,   Inc.   d/b/a   Mammoth   Pet
Products shall not recover from Defendant Xena Express, Inc. its

reasonable attorneys' fees in connection with this action as the Court finds that this is not an exceptional case within the meaning of 15 U.S.C. § 1117 in a separate prove up on noticed motion.

IT IS SO ORDERED:


Dated: October 6, 2009

_____

Honorable John F. Walter

United States District Court Judge

NOTE: CHANGES MADE BY THE COURT